**Entered on Docket
November 21, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**



**Signed: November 21, 2006**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 05-44325 TM |
| | Chapter 7 |
| ABDULLAH QARI, aka MICHAEL QARI, fdba ARIANA LIMOUSINE SERVICES, and RAHELA JALAL QARI, aka RAHELA JALAL, | |
|     Debtors | |
| _____/ | |
| PATELCO CREDIT UNION | A.P. No: 05-4465 AT |
|     Plaintiff, | |
|   vs. | |
| ABDULLAH QARI, aka MICHAEL QARI, fdba ARIANA LIMOUSINE SERVICES, and RAHELA JALAL QARI, aka RAHELA JALAL; and PAUL MANSDORF, CHAPTER 7 TRUSTEE | |
|     Defendants. | |
| _____/ | |

**MEMORANDUM OF DECISION**

In the above-captioned proceeding, plaintiff Patelco Credit Union ("Patelco") seeks to except from the above-captioned debtor's (the "Debtor") chapter 7 discharge pursuant to 11 U.S.C. §

523(a)(2)(A) and (6) the debt arising from two vehicle loans (the "Debt"). The proceeding was tried to the Court on October 11, 2006 and was taken under submission. After considering the evidence presented and the arguments made at trial, the Court finds and concludes that Patelco is entitled to a judgment of nondischargeability as to the Debt. The basis for the Court's decision is set forth below.[1]

**BACKGROUND**

At all times relevant to this proceeding, the Debtor was and still is an automobile salesman. He has over eighteen years of experience in the automobile sales industry. He has held positions at most levels of management, including sales manager, finance manager, and director of operations.

In November 2001, the Debtor was employed by Hayward Motors, Hayward, California, as sales manager. He was also at times responsible for overseeing the finance department. The owner of Hayward Motors was and is a long time friend and business associate of the Debtor's.

In November 2001, the Debtor obtained a loan from Patelco to enable him to purchase a Mercedes Benz vehicle (the "Mercedes")

---

[1] The complaint also names the Debtor's wife and co-debtor, Rahela Qari, and Paul Mansdorf, the chapter 7 trustee, as defendants. Mrs. Qari co-signed the notes evidencing the Debt. No evidence was presented at trial to support a nondischargeable judgment against Mrs. Qari or Mansdorf. Therefore, judgment will be entered in their favor.

2

from Hayward Motors, ostensibly for his personal use. In fact, the Debtor purchased the Mercedes to use in his limousine business. However, he did not disclose this fact to Patelco. At the time he purchased the Mercedes, the Debtor knew that Patelco did not make business loans.

The loan agreement required the Debtor to give Patelco a security interest in the Mercedes by placing its name on the certificate of title. The check issued to fund the loan contained a restrictive endorsement, requiring the Debtor to cause Patelco's name to be placed on title. The check was cashed, but Patelco's name was not placed on title to the Mercedes. A few months after the loan transaction, Patelco called the Debtor and complained that it had not received evidence that it had been placed on title. The Debtor still did not cause Patelco to be placed on title.

After driving the Mercedes for several weeks, the Debtor purportedly consigned the Mercedes to Hayward Motors for resale. The Mercedes was sold in April 2002. The proceeds were not paid to Patelco. However, the Debtor continued to make the monthly loan payments for a period of time thereafter. In July 2002, while the Debtor was still current on the loan payments, the Debtor applied for and received a second vehicle loan from Patelco, this time for a Ford Mustang (the "Mustang"). Again, the Debtor agreed to place Patelco on title as the secured creditor. Again, a check was

issued with a restrictive endorsement, requiring Patelco to be placed on title. Again, the Debtor failed to cause Patelco to be placed on title. Again, the Debtor testified that he consigned the Mustang to Hayward Motors;[2] the Mustang was sold to a third party; and the proceeds were not paid to Patelco. At that time, the Debtor stopped making payments on both of the vehicle loans, and Patelco learned that both vehicles had been sold.

In January 2003, Patelco filed suit against the Debtor in state court, asserting claims for breach of contract and fraud, among other things. In January 2004, the state court granted Patelco's motion for summary judgment in that action on all the claims except the claims for fraud and civil conspiracy. Those claims were dismissed without prejudice. A money judgment was entered against the Debtor and his wife for $79,302.20, plus attorney's fees.

In August 2005, the Debtor filed a chapter 7 bankruptcy petition. Patelco filed this nondischargeability action in

---

[2]The Court is not persuaded that the Mercedes and Mustang were truly "consigned" to Hayward Motors. Qari testified that he had entered into a written consignment agreement with Hayward Motors. However, he failed to introduce into evidence either the original agreement or a copy of it. Patelco called an expert witness who testified that the documents evidencing the resale of the Mercedes did not reflect industry practice for consignment sales: i.e., if the sale had been a consignment, the Debtor should have been listed as the seller, not Hayward Motors. In fact, according to the vehicle records for the Mercedes, the Debtor was never the registered owner of the Mercedes.

4

November 2005, asserting a right to a nondischargeable judgment under 11 U.S.C. § 523(a)(2)(A) and (6). Patelco moved for summary judgment in April 2006, based on the state court judgment. Because the state court judgment did not rule on the fraud claim and instead dismissed it without prejudice, the Court denied the motion, concluding that an evidentiary hearing was required.

**DISCUSSION**

**A. APPLICABLE LAW**

Section 523(a)(2)(A) provides, in pertinent part, that a chapter 7 discharge does not discharge an individual's debt:

> [F]or money...to the extent obtained, by-
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To establish "actual fraud," a creditor must prove five elements: (1) that the debtor made a false representation, (2) that the debtor knew the declaration to be false at the time that he made it, (3) that he made the false representation with the intention of deceiving the creditor; (4) that the creditor relied on the false representation; and (5) that the creditor was damaged as a proximate result of having relied on the false representation. See In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996). These elements must be proved by the preponderance of the evidence. Id. at 1087. "[A] false

5

representation may be established by an omission when there is a duty to disclose." Eashai, at 1089. As stated in Eashai, provided the debtor has a duty to disclose, "[o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose...." Id.

Section 523(a)(6) provides, in pertinent part, that a chapter 7 discharge does not discharge an individual's debt:

> [F]or willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(2)(A). In Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), the Supreme Court held that, because the word "willful" modifies the word "injury," a debt is not excepted from a debtor's chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(6) unless the debtor intended to injure the creditor. Thus, negligent or reckless acts do not give rise to a nondischargeable debt pursuant to § 523(a)(6). Geiger, 523 U.S. 64. The debtor need not have held any personal animosity against the creditor, but he must have intended the consequences of his act. Id, at 61-62. In determining whether a debt is for a willful injury, the Court must determine whether the debtor subjectively intended to harm the

6

debtor or had a subjective belief that harm was substantially certain.  See In re Su, 290 F.3d 1140, 1143-44 (9th Cir. 2002).

The element of maliciousness must be determined separately from willfulness.  Su, 290 F.3d at 1146; In re Sicroff, 401 F.3d 1101, 1105 (9th Cir. 2005).

> A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'

See In re Jercich, 238 F.3d 1202, 1209 (9th Cir.), *cert. denied* 533 U.S. 930 (2001), quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)(en banc).  The Ninth Circuit has not yet held definitively whether these elements are based on a subjective or objective standard.  However, in Bammer, it held that a debtor acted maliciously and did not have just cause or excuse despite the fact that he was motivated by compassion for his mother and did not receive any benefit himself.  Bammer, 131 F.3d at 793.  It held that it would be contrary to the spirit of § 523 "to permit a standardless, unmeasurable, emotional, and nonlegal concept such as compassion to negate an identifiably and legally wrongful act."  Id.  Thus, any subjective claim of just cause and excuse should be judged narrowly.

**B. DECISION**

    **1. Nondischargeability Claim Under 11 U.S.C. § 523(a)(2)(A)**

As stated above, a claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A) has five elements: (1) a false representation, (2) knowledge of falsity, (3) made with the intention of deceiving the creditor, (4) reliance by the creditor, and (5) damage proximately caused. As discussed below, at trial, Patelco established each of these elements by a preponderance of the evidence.

The Debtor's failure to disclose to Patelco that he intended to use the Mercedes in his limousine business constitutes a false representation within the meaning of 11 U.S.C. § 523(a)(2)(A).[3] Given the Debtor's admission that he knew that Patelco did not make business loans, the Court finds that the Debtor had a duty to disclose to Patelco that he intended to use the Mercedes for business purposes. His failure to disclose this information, knowing its significance, therefore, also satisfies the "knowledge of falsity" requirement. The Court also finds and concludes that the Debtor failed to disclose this information, intending to deceive Patelco. The Debtor wanted to obtain the loans and knew

---

[3] No evidence was presented that the Debtor intended to use the Mustang for business purposes. Given the apparent success of the scheme with respect to the Mercedes, the Debtor may have simply purchased the Mustang for resale as a means of generating cash.

8

Patelco would not give him the loan if he disclosed his intended use of the Mercedes.

Patelco clearly relied on the Debtor's failure to disclose his intended use of the Mercedes by making the first loan. It was justified in doing so given the Debtor's failure to disclose his intended use of the vehicle. There were no "red flags" at that point that should have raised Patelco's suspicions, thereby requiring it to conduct a more thorough inquiry of the debtor's intended use of the Mercedes. See In re Hashemi, 104 F.3d 1122, 1126 (9th Cir. 1997)(no duty to investigate in absence of "red flags"). Patelco's damages, in the amount of the unpaid loan and related costs, were also clearly proximately caused by the failure to disclose and Patelco's reliance on it.

The Court was not persuaded by a preponderance of the evidence that, at the time he purchased the Mercedes, the Debtor intended to resell it without recording Patelco's name as secured creditor on the certificate of title and without repaying Patelco's loan. This may have been a scheme developed later. However, the Court was persuaded by a preponderance of the evidence that, by the time he purchased the Mustang, this was precisely the Debtor's intention. Thus, the Court concludes that, when the Debtor obtained the second vehicle loan, he falsely represented to Patelco that he intended to repay the loan, that he knew this representation was false, and

9

that this false representation was intended to deceive Patelco. Patelco's damages are established by the state court judgment.

The most difficult element to evaluate is the justifiable reliance element with respect to the loan for the Mustang. Patelco knew at the time it made this loan that the Debtor had failed to record its name on the certificate of title for the Mercedes. It was clearly negligent in making another loan to the Debtor given this failure. Under these circumstances, can it be said that Patelco justifiably relied on the Debtor's promise to repay the loan for the Mustang?

The Court concludes that it can. Justifiable reliance is judged by a subjective standard. See Field v. Mans, 516 U.S. 59, 67 (1995). Thus, reliance may be justifiable, even if not reasonable, from an objective standpoint. See In re Tallant, 218 B.R. 58, 68 (Bankr. 9th Cir. 1998). The fact that a creditor is negligent in ensuring that the formalities of the transaction are followed cannot give a debtor the license to defraud the creditor. See Eashai, 87 F.3d at 1090-91; Tallant, 218 B.R. at 67.

As noted above, the Debtor was continuing to make payments on the Mercedes loan at the time he purchased the Mustang. Therefore, although, given the problems with title to the Mercedes, Patelco's reliance on the Debtor's promise to repay the Mustang loan was

10

perhaps not reasonable, the Court finds and concludes that it was justifiable.

The Debtor denied having a fraudulent intent. He testified that he never received any of the proceeds from the resale of the vehicles and thus had no intent to deceive Patelco. The Court did not believe him. His testimony was impeached by the deposition testimony of Khalil Asefi ("Asefi"), the owner of Hayward Motors. Asefi testified that the Debtor used the proceeds to pay the monthly loan payments to Patelco on the Mercedes loan. The Court found the Debtor's testimony that he continued to make the loan payments from his own income after the Mercedes was sold lacking in credibility.[4]

The Debtor also testified that it was not his fault that Patelco's name was not recorded as the secured creditor on the certificates of title for the two vehicles. He testified that

---

[4] The Debtor's testimony was lacking in credibility in other respects as well. His testimony concerning his reasons for consigning the vehicles made no sense. He testified that he consigned the vehicles to Hayward Motors because his limousine business was failing. However, as noted above, the Debtor testified that he consigned the Mercedes a few weeks after he obtained it--i.e., in early January 2003. He testified that his business failed because his driver loaned one of his other vehicles--i.e. a Lincoln--to a friend, the friend received a traffic citation, and the Lincoln was impounded. Based on the traffic citation, a copy of which was introduced into evidence, this did not occur until May 2003, after the Mercedes was sold. Similarly, the failure of the business as a result of the citation could not have motivated the consignment of the Mustang which was not even purchased until July 2003.

11

after he consigned the vehicles, he had no ability to cause this to be done. The vehicles were under the control of Hayward Motors.

The Court was not persuaded by this testimony either. As sales manager, with responsibility for overseeing the finance department, the Debtor clearly had access to the documents required to correct this omission. Moreover, if, as he claims, he merely consigned the vehicles to Hayward Motors before their resale, the Debtor was still the owner of the vehicles and had an absolute right to have Patelco's name listed as the secured creditor on the certificate of title.

In sum, the Court finds and concludes that Patelco has met its burden of proof with respect to all five elements of its claim under 11 U.S.C. § 523(a)(2)(A) and is entitled to a judgment declaring the debt created by the state court judgment nondischargeable.

**2. Claim of Nondischargeability Under 11 U.S.C. § 523(a)(6)**

As noted above, Section 523(a)(6) of the Bankruptcy Code excepts from the discharge a debtor for "willful and malicious injury." This exception applies to property damage as well as personal injury. See 11 U.S.C. § 523(a)(6). There is no dispute that, in this case, the Debtor's actions caused Patelco's "injury": i.e., its failure to receive repayment of the vehicle loans. The only issues are whether his actions were "willful" and "malicious."

As set forth above, these elements must be addressed separately.

**a. Willfulness**

As discussed above, a two-pronged test is used to evaluate willfulness. Sicroff, 401 F.3d at 1106, citing Su, 290 F.3d at 1140. The test is subjective. Su, 290 F.3d at 1143-46. The court must determine that: (1) the act that resulted in the creditor's injury was intentional and (2) the debtor actually intended the injury to occur or, at least, was substantially certain that it would occur. Id.

Patelco met its burden of proof as to each of these prongs. The acts that resulted in the creditor's injury were clearly intentional regardless of how those acts are defined. In one sense, the acts that resulted in the injury may be defined simply as the loan transactions themselves. If Patelco had not made the loans, Patelco would not have suffered the injury of not being repaid. The Debtor sought out the loans intentionally.

However, the acts that resulted in the injury might also be described more narrowly: e.g., as the failure to cause Patelco's name to be placed on the certificates of title for the vehicles. The Court finds that these acts (or, rather, omissions) were also intentional. Even if the Debtor initially failed to record Patelco's name on the certificate of title for the Mercedes through negligence, he could have corrected the problem when Patelco called

13

it to his attention a few months later. Had the Debtor corrected it, the Mercedes could not have been sold without paying the proceeds to Patelco. Similarly, given this sequence of events, it is impossible to view his failure to record Patelco's name on the certificate of title for the Mustang as anything but intentional.

The evidence presented also persuaded the Court that the Debtor intended Patelco's injury. The Debtor was an experienced car salesman. He had a managerial position with occasional responsibility for oversight of the finance department. He knew what the consequences would be in the event of a resale of the vehicles of the failure to place a secured creditor on title. If he did not actually intend to harm Patelco, he was substantially certain that that harm would occur. Thus, the element of "willfulness" has been established.

### b. Malice

As discussed above, the "malice" test contains four elements. The creditor must prove the act was: (1) wrongful, (2) intentional, (3) necessarily caused injury, and (4) was done without just cause or excuse. Sicroff, 401 F.3d at 1106, citing In re Jerich, 238 F.3d 1202, 1209 (9th Cir. 2001). All four element of this test are easily established by the evidence presented. Clearly, the failure to record Patelco's name on the certificate of title was wrongful. It constituted a breach of the loan agreement and a violation of

the restrictive endorsement on the checks funding the loans. As discussed above, the Court was persuaded by the evidence that the Debtor intentionally failed to record Patelco's name on the certificates of title.

These actions necessarily caused Patelco's injury. Although the Debtor could have repaid the loans even though Patelco's name was not placed on the certificates of title, as a result of the Debtor's failure to act as legally required, Patelco had no assurance that the loan would be repaid. And, of course, Patelco was not repaid. Patelco also lost its ability to repossess the vehicles and thus recoup some of its losses by selling them.

Finally, the Debtor has presented insufficient evidence of any just cause or excuse for his failure to cause Patelco's name to be placed on the certificates of title. His attempt to blame Hayward Motors for the failure was unpersuasive. Even if, as the evidence suggests is possible, the Debtor was never on title to the vehicles, his position at Hayward Motors made it possible for him to correct the problem. Moreover, the fact that the failure was repeated with respect to the Mustang renders his attempted excuses totally lacking in credibility.

**CONCLUSION**

Patelco is entitled to a judgment of nondichargeability as to its state court judgment pursuant to both 11 U.S.C. § 523(a)(2)(A)

15

and 11 U.S.C. § 523(a)(6). Counsel for Patelco is directed to submit a proposed form of judgment in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Spencer P. Scheer
Scheer & Imfeld, LLP
100 Smith Ranch Road, Ste. 306
San Rafael, CA 94903

Howard L. Hibbard
22693 Hesperian Blvd., Ste. 210
Hayward, CA 94523

17